# UNITED STATES BANKRUPTCY COURT
# FOR THE NORTHERN DISTRICT OF OHIO

In Re:                                    )
                                          )       **JUDGE RICHARD L. SPEER**
Karl/Kimberlee Blankenship                )
                                          )       Case No. 08-30226
    Debtor(s)                         )
                                          )

## DECISION AND ORDER

This cause comes before the Court after a Hearing on the Motion of the United States Trustee to Dismiss Case Pursuant to 11 U.S.C. § 707(b)(1) and 11 U.S.C. § 707(b)(3). At the conclusion of the Hearing, the Court took the matter under advisement so as to afford time to thoroughly consider the evidence and the issues raised by the Parties. The Court has now had this opportunity, and finds, for the reasons now explained, that the Motion of the United States Trustee should be Granted.

## DISCUSSION

Sections 707(b)(1) and 707(b)(3), under which the United States Trustee brings its Motion to Dismiss, operate together, allowing a court to dismiss a debtor's bankruptcy case when the particular circumstances of the filing of the case demonstrate abuse. In relevant part, these provisions provide:

> (b)(1) After notice and a hearing, the court . . . may dismiss a case filed by an individual debtor under this chapter whose debts are primarily consumer debts . . . if it finds that the granting of relief would be an abuse of the provisions of this chapter.
>
> (3) In considering under paragraph (1) whether the granting of relief would be an abuse of the provisions of this chapter in a case in which the presumption in subparagraph (A)(i) of such paragraph does not arise or is rebutted, the court shall consider–

In re: Karl/Kimberlee Blankenship
Case No. 08-30226

> (A) whether the debtor filed the petition in bad faith; or
>
> (B) the totality of the circumstances . . . of the debtor's financial situation demonstrates abuse.

Matters concerning the dismissal of a case under these provisions, which affects both the ability of a debtor to receive a discharge and directly affects the creditor-debtor relationship, are deemed to be core proceedings pursuant to 28 U.S.C. §§ 157(b)(2)(J)/(O). And as a core proceeding, this Court has been conferred with jurisdictional authority to enter a final order in this matter. 28 U.S.C. § 157(b)(1).

In seeking to have the Debtors' bankruptcy case dismissed for abuse under §§ 707(b)(1) and (b)(3), the United States Trustee (hereinafter the "UST") set forth this single basis for its Motion: "the debtors have the ability to repay their creditors out of their future income and earnings." (Doc. No. 25, at pg. 1).

It is established jurisprudence that bankruptcy is intended to provide a deserving debtor a fresh start, but not a head start. *Taylor v. AGE Fed. Credit Union (In re Taylor)*, 3 F.3d 1512, 1516 (11th Cir. 1993). It follows from this that Chapter 7 bankruptcy is not intended to be used by those debtors having at their disposal the financial resources to make an effort to repay their debts. Thus, whether, as the UST contends in this case, a debtor has the ability to repay their creditors is often a primary, if not dispositive, consideration when determining the propriety of dismissing a debtor's case under § 707(b). *In re Krohn*, 886 F.2d 123, 126 (6th Cir. 1989).

A frequently utilized measure, when determining whether a debtor has the ability to repay their debts, is to ascertain whether, under a hypothetical Chapter 13 repayment plan, the debtor could repay a meaningful percentage of his or her unsecured debts. *In re Behlke*, 358 F.3d at 434-35; *In re Glenn*, 345 B.R. 831, 836 (Bankr. N.D.Ohio 2006). This determination is made by reference to the amount of "disposable income" the debtor has available to pay into the plan. In turn, the term

Page 2

In re: Karl/Kimberlee Blankenship
Case No. 08-30226

"disposable income" is defined, generally, as that income received by a debtor which is not reasonably necessary to be expended for the maintenance or support of the debtor or a dependent of the debtor. 11 U.S.C. § 1325(b)(2); *In re Pier*, 310 B.R. 347, 353 (Bankr. N.D.Ohio 2004).

Based solely upon the financial information provided by the Debtors, the Court would agree that their ability to repay their creditors is severely constrained, if not completely lacking. According to their figures, they have just $219.09 in available monthly 'disposable income' to pay an unsecured debt burden of $92,268.34. (Debtors' Ex. No. 1). This 'disposable income' figure was calculated utilizing a net income figure of $4,017.64 – of which $2,643.96 was attributable to Mr. Blankenship's employment, while $1,373.68 was attributable to Mrs. Blankenship's employment. *Id*. Against this, the Debtors subtracted $3,798.55 in necessary, monthly expenses, including: (1) an expenditure of $519.00 per month for the retention of one of two rental properties the Debtors owned at the time they filed their bankruptcy petition; and (2) a monthly outlay of $738.00 per month so as to enable the Debtors to maintain the mortgage obligation on their primary residence. *Id*.

Yet, whether a debtor has the ability to make an effort to repay their debts is a factual question for the Court to resolve, and is hence not dependent on the financial figures provided by the Debtors. *In re Gonzalez*, 378 B.R. 168, 173 (Bankr. N.D.Ohio 2007). Rather, "in its role as the trier-of-fact, the Court is under a duty to scrutinize a debtor's expenses, and make downward adjustments where necessary, so as to ensure that the debtor's expenses are reasonable. Similarly, when determining a debtor's 'disposable income,' a court may impute income to the debtor when it would be equitable to do so – *e.g.*, when the debtor is voluntarily underemployed." *Id*.

Based on the Court's authority to equitably adjust the Debtors' budgetary figures, the UST cited to the following expenditures which it deemed impermissible: First, the UST took issue with the Debtors, when arriving at their net income figure of $4,017.64, taking an approximately $400.00 deduction for 401(k) loan and contribution. Second, it is the position of the UST that the Debtors

Page 3

should not be permitted to take a deduction of $519.00 per month for the retention of one of their rental properties. In addition to these expenditures, the UST also claimed that the Debtors have understated their income by approximately $200.00 per month, pointing to past tax refunds received by the Debtors, particularly the Debtors' 2006 tax refund of $2,400.00. The merits of these points are now addressed.

First, with regards to the Debtors' 401(k) account, this Court has often observed that, as applied to § 707(b)(3), it would be unfair to allow a debtor to commit a part of their earnings to the payment of their own retirement fund while at the same time paying their creditors less than a 100% dividend. *See, e.g., In re Gonzalez*, 378 B.R. at 174. As a result, this Court has not generally permitted debtors, for purposes of § 707(b)(3)(B), to expense against their 'disposable income' voluntary contributions made to retirement accounts. *See, e.g., Id.*, citing *Harshbarger v. Pees (In re Harshbarger)*, 66 F.3d 775 (6th Cir. 1995) and *Behlke v. Eisen (In re Behlke)*, 358 F.3d 429, 434-35 (6th Cir. 2004).

To be sure, this is not an absolute rule. Section 707(b)(3)(B), being a totality of the circumstances test, must be necessarily fluid so as to take into account all factors of relevance. *In re Felske*, — B.R. —, 2008 WL 339501 (Bankr. N.D.Ohio 2008). Hence, an individual's particular circumstances, such as the imminent advance of retirement combined with minimal savings, could warrant permitting a debtor to expense against their 'disposable income' payments being made to retirement accounts. The circumstances of this case, however, cannot be said to reach such a level. Neither of the Debtors are near retirement age. Moreover, Mr. Blankenship already has approximately $100,000.00 in an exempt 401(k) account. Accordingly, the focus of this case turns to the next issue: the Debtors' tax refunds.

Tax refunds arise as the result of a taxpayer's overpayment of their tax liability. Such funds, thus, belong to the taxpayer. Following this principle, this Court has held that, as applied to § 707(b),

Page 4

In re: Karl/Kimberlee Blankenship
Case No. 08-30226

"[t]ax refunds, although not available on a monthly basis, are a source of income for a debtor; therefore, so long as there is the realistic prospect of similar refunds in the future, tax refunds will be included in a determination of the Debtor's net income for purposes of § 707(b)." *In re Gonzalez*, 378 B.R. at 175-76.

To this end, a further $200.00, on top of the $400.00 already reallocated from the Debtors' retirement contributions, will be added to the funds the Debtors now have available to repay their creditors. In this regard, the facts in this case show that in 2006 the Debtors overpaid their taxes liability by approximately $2,400.00, or about $200.00 per month. Moreover, while no actual numbers were provided, the Debtors acknowledged that in other tax years they made similar overpayments.

Finally, in addition to the Debtors' retirement contributions and tax refunds, the UST also takes the position that the Debtors should not be permitted to take a deduction of $519.00 per month for the retention of one of their rental properties. The Court again agrees.

The Debtors readily acknowledged that they have little, if any, equity in their rental property. Moreover, the Debtors related to the Court that the rental property, which is currently vacant, will draw no more than $400.00 to $450.00 per month in rent. The rental property is therefore a drain on the Debtors' monthly budget, and one which the Debtors' creditors should not have to bear, especially considering that the property presently has no monetary value to the Debtors. For purposes of this action, therefore, the Debtors will be required to reallocate the $519.00 per month they presently expend to maintain their rental property to the repayment of their creditors.

The fact, as the Debtors argue, that a sale of their rental property could result in a deficiency, which would have to be paid in a Chapter 13 bankruptcy, thereby diluting any payout to the Debtors' other unsecured creditors, does not change the result. To the contrary, using the existence of a

Page 5

In re: Karl/Kimberlee Blankenship
Case No. 08-30226

deficiency as a defense against a 707(b) action is a *non sequitur*. To be sure, the inclusion of a deficiency in a Chapter 13 plan will, in many instances, be paid at the expense of a debtor's other unsecured creditors. However, under § 1325(a)(4),[1] known as the best-interest test, unsecured creditors in a Chapter 13 must receive at least as much value as they would have received in Chapter 7 liquidation. Thus, by definition, a debtor's creditors can not receive any less of a distribution if a debtor pursues a Chapter 13 plan of reorganization. While in most instance, since the majority of Chapter 7 bankruptcies result in little or no distribution to unsecured creditors, creditors of a Chapter 13 debtor will receive significantly more value, notwithstanding the inclusion of any deficiency in the pool of unsecured creditors. Simply put, less of something is better than more of nothing.

Consequently, when the three discussed revisions to the Debtors' disposable income are considered, the Debtors will be deemed to have available an extra $1,119.00 in 'disposable income' to repay their creditors ($400.00 retirement contributions + $200.00 income tax refund + $519.00 payment on rental property). When added to the $219.09 the Debtors already show as 'disposable income,' this amounts to $1,338.09 the Debtors have available to repay their unsecured creditors. Over 60 months, the length of a Chapter 13 plan, this amounts to over $80,000.00, an amount sufficient to pay nearly all of the Debtors' unsecured debt. As such, the revised financial figures before the Court clearly support the position of the UST that the Debtors have the ability to repay their debts.

Notwithstanding, a debtor's ability to pay is simply one facet of § 707(b)(3) analysis. As this Court previously explained:

---

[1] This provision provides that " the value, as of the effective date of the plan, of property to be distributed under the plan on account of each allowed unsecured claim is not less than the amount that would be paid on such claim if the estate of the debtor were liquidated under chapter 7 of this title on such date[.]"

Page 6

>the overall test, as set forth § 707(b)(3)(B), is not whether a debtor has an "ability to pay," but whether, based on the totality of the circumstances, a debtor has a "need" for bankruptcy relief. The ability of a debtor to pay, therefore, is just one facet of this larger test. In this way, it was set forth in *In re Krohn*: "Other factors relevant to 'need' include whether the debtor enjoys a stable source of future income, whether he is eligible for adjustment of his debts through Chapter 13 of the Bankruptcy Code, . . . and whether his expenses can be reduced significantly without depriving him of adequate food, clothing, shelter and other necessities." 886 F.2d at 127.

*In re Stewart*, 383 B.R. 429, 433 (Bankr. N.D.Ohio 2008). Thus, while a debtor's ability to pay may ultimately prove dispositive on a motion under § 707(b)(3), a court may consider other circumstances bearing on a debtor's financial situation when deciding the propriety of dismissal.

Yet, even going beyond those points already discussed, no particular facets of the Debtors' financial situation appear to mitigate against a finding that the filing of the Debtors' case was not abusive within the meaning of § 707(b). For example, the Debtors are relatively young and from all appearance in good health. The Debtors also do not have any dependents.

In addition, both of the Debtors appear to have steady jobs, with each of the Debtors setting forth that they have been with the same employer for 20 years. Moreover, from their employment, the Debtors' annual salary is well above the state-median income of $48,332.00,[2] and has been relatively consistent; in 2005, the Debtors' earned $85,000.00; in 2006, the Debtors grossed just under $75,000.00; and in 2007, the Debtors' earned $80,000.00. In this regard, if, as Mr. Blankenship contends, his salary will be diminished because of a reduction in overtime, a Chapter 13 plan of reorganization is sufficiently malleable to take into account such a change. *See* 11 U.S.C. § 1329 (modification of plan of reorganization after confirmation).

---

[2] This was the amount in effect, for a household size of two, when the Debtors filed for bankruptcy on January 22, 2008. www.usdoj.gov/ust/eo/bapcpa/20080101/bci_data/median_income_table.htm

Page 7

In re: Karl/Kimberlee Blankenship
Case No. 08-30226

Therefore, given that the Debtors, albeit with some adjustments, have within their household budget the ability to repay their creditors, and given that no circumstances mitigate against dismissal, the Court finds that the Motion of the United States to Dismiss under § 707(b)(1) and § 707(b)(3) has merit. As such, unless the Debtors voluntarily convert their case, the Court is bound to promptly enter an order of dismissal pursuant to § 707(b)(1). In reaching the conclusions found herein, the Court has considered all of the evidence, exhibits and arguments of counsel, regardless of whether or not they are specifically referred to in this Decision.

Accordingly, it is

**ORDERED** that the Clerk, United States Bankruptcy Court, is directed to prepare for presentation to the Court an order of dismissal under 11 U.S.C. § 707(b)(1) if, at the opening of business on Tuesday, May 27, 2008, this case is still proceeding under Chapter 7 of the United States Bankruptcy Code.

**IT IS FURTHER ORDERED** that, subject to the Debtors' election to convert this case, the Motion of the United States Trustee to Dismiss under 11 U.S.C. § 707(b)(1) and § 707(b)(3), be, and is hereby, GRANTED.

Dated: May 15, 2008

                                                  Richard L. Speer
                                                  United States
                                                  Bankruptcy Judge

Page 8

# CERTIFICATE OF SERVICE

Copies were mailed this 15th day of May , 2008 to:


United States Trustee
Howard M. Metzenbaum U. S. Courthouse
201 Superior Avenue, East
Suite 441
Cleveland, OH 44114

James A Harris
136 S Main St
Marion, OH 43302-3720

Karl R Blankenship
1363 Trachsel Ave.
Marion, OH 43302

Kimberlee A Blankenship
1363 Trachsel Ave.
Marion, OH 43302

Michael J. McCormick
1544 Old Alabama Rd.
Roswell, GA 30076

Litton Loan Servicing, L.P.
McCalla, Raymer, et al.
Bankruptcy Department
1544 Old Alabama Road
Roswell, GA 30076

Dean Wyman
Office of the US Trustee
Howard M. Metzenbaum U.S. Court House
201 Superior Avenue, Suite 441
Cleveland, Oh 44114-1240

Recovery Management Systems Corporation
25 S.E. 2nd Avenue, Suite 1120
Miami, FL 33131

William L Swope
221 South Main St
Findlay, OH 45840-3336

Steven H. Patterson
120 E. 4th St.
8th Floor
Cincinnati, OH 45202

        /s/Dawn Serna-Gensch
Deputy Clerk, U.S. Bankruptcy Court